ANSON J. JONES, RESPONDENT, v. DELAWARE, LACKA-
WANNA AND WESTERN RAILROAD COMPANY, APPEL-
LANT.

Submitted March 21, 1921—Decided June 20, 1921.

The federal act of February 28th, 1920, enacting that the period of
federal control shall not be computed as a part of the periods
of limitation in actions against carriers, is inapplicable to actions
under the Federal Employers' Liability act of 1908.

---

On appeal from the Warren County Circuit Court.

For the respondent, *William C. Gebhardt & Son.*

For the appellant, *Frederic B. Scott.*

The opinion of the court was delivered by

SWAYZE, J. This was an action brought May 14th, 1920, to recover damages for an injury to the plaintiff, a loco-motive fireman, while engaged in interstate commerce, in the employ of a steam railroad then also engaged in inter-state commerce. The injury happened April 22d, 1916, and the question raised in the case is whether or not the action can be maintained. More than two years had elapsed, and it cannot be maintained unless the effect of the Federal Employers' Liability act is modified by the provision of the act of congress of February 28th, 1920, section 206 (*f*). The material portion provides as follows: "The period of

federal control shall not be computed as a part of the periods
of limitation in actions against carriers, for claims for repara-
tion to the commission, for causes of action arising prior to
federal control." There can, we think, be no question that
the railroad company was a carrier, to which this act applies.

The question is the true meaning of the word "limitation."
That meaning is somewhat ambiguous. It may mean, as
it generally does when used in connection with actions at
law, the time within which an existing cause of action must
be prosecuted, a limitation on the remedy, or it may mean
a limitation on the definition and the extent of the cause
of action itself, a limitation on the liability.

*The Harrisburg*, 119 *U. S.* 199; *Phillips* v. *Grand Trunk
Railway*, 236 *Id.* 662; *Central Vermont Railway* v. *White*,
238 *Id.* 507; *Atlantic Coast Line* v. *Burnette*, 239 *Id.*
199; *Louisville Cement Co.* v. *Int. Com.*, 246 *Id.* 638.
The lapse of the statutory time in one case forever bars
an already existing action; in the other case no action
ever exists unless it is brought within time; that it should
be brought within time is an essential part of the cause
of action, of the very definition of the right itself. Com-
pliance with the statute must be averred in the pleading
(*Lapsley* v. *Public Service Corporation*, 75 *N. J. L.* 266),
because it is a part of the definition; and lapse of time
will be fatal even though not pleaded. *Atlantic Coast Line
Railroad* v. *Burnette, supra*, 239. The one statute provides
a limitation on an already existing right; the other provides
for a time within which an inchoate right becomes actual
by the bringing of suit. We must, however, assume that
congress meant to be just. And if the power to turn the
inchoate into an actual right had been hampered or taken
away by federal control, there would be some reason for
holding that the period of federal control ought to be de-
ducted from the two years as well as from the six year
period. Such is not the case. Congress and the president
were careful to save the right to sue. By the president's
proclamation under the act of 1916, by the act of March 21st,

1918, and by the director general's order of April 9th, 1918, provision was expressly made that while no attachment by action or execution should be levied against the property in the control of the director general, suits might be brought by and against carriers and judgments rendered as theretofore except so far as the director general might by general or special order otherwise determine. Under the president's proclamation and the act of March 21st, 1918, the orders of the director general thereunder permitted suits against carriers and regulated the practice. *West* v. *New York, New Haven and Hartford Railroad Co.,* 123 *N. E. Rep.* 621; the relevant parts of the proclamation, the act of 1918, and the orders are set forth in the opinion. Since the injured party was left free under federal control to bring suit as before, no reason existed for so construing the act of February 28th, 1920, as to extend to actions under the Federal Employers' Liability act. A reason does exist for not so construing it. So construed the act would create a new action with a different element. There would be first the original cause of action, an essential element of which was that suit should be brought within two years after the right accrued; second, a new cause of action which would require that suit be brought within a time equal to the two years plus the period of federal control, and this time must be averred. The second cause of action would arise out of a liability created after the fact, with different elements and conditions. The injustice of this, in case of a contract, is obvious and is illustrated by a decision of the Circuit Court of Appeals for the eighth circuit. *Eberhart* v. *United States,* 204 *Fed. Rep.* 884. This was a suit on a contractor's bond with sureties. When the sureties made their contract, one of the conditions was that suits should be brought within one year. Later an act of congress enlarged the time by doing away with this limitation. The effect would have been to enlarge the liability of sureties on the bond and this the court held was not permissible. It was urged that under the ruling in *Campbell* v. *Holt,* 115 *U. S.* 620, a right to defeat a debt

by the statute of limitations is not a vested right so as to be beyond legislative power in a proper case. As to this the court said (as to the case of sureties), "congress had no right to extend the statutory bar after it had once attached. The sureties, when they signed the bond, knew that under this [then existing] statute, which was a part of their contract of suretyship, their liability to creditors as such sureties would cease twelve months after the work had been completed." And it was unjust to extend their liability when they might properly have looked on their liability as past, and parted with their collateral. The injustice of undertaking by an act of congress to change a man's contract to his detriment, is so obvious that the federal constitution takes pains to prohibit the state governments from impairing the obligation of contracts. The injustice of creating a liability in tort, after the tort has happened, that is, to make what was not actionable before, actionable after, is shown even more clearly by the provisions against *ex post facto* legislation in cases of crime. It is well settled that a retrospective meaning or effect ought not to be given a statute if the language reasonably admits of another construction. *Citizens Gas Light Co.* v. *Alden,* 44 *N. J. L.* 648, 653; *Frelinghuysen* v. *Morristown,* 77 *Id.* 493. An innocent act ought not to be punished after the event. Calling it a tort and thus avoiding the constitutional prohibition of *ex post facto* crimes does not help the matter. Right and wrong ought not to depend on a mere difference of name. Calling torts what are in fact crimes, would make it easy to evade the constitution by specious definitions. We should not give the word "limitation" a meaning that would put congress in the position of doing an injustice it did not intend, especially in view of the actual reservation of the right of action. There was a reason for providing that the period of federal control should not be computed in determining the time of limitation as related to the remedy only, for congress about that time was, with the acquiescence of everybody who had in mind the vigorous prosecution of the war, passing stay laws

or moratoriums which prevented creditors from maintaining actions. As creditors were thereby deprived of a period of time which they previously had had for the purpose of bringing actions, it was right that the time lost should not be charged against them. The stay laws or moratoriums were in cases of already existing obligations and this reason did not apply to a case like the present where there was no stay law or moratorium. Under this state of facts, one who had the right to bring an action and failed to do so, might well be held to have abandoned his right. We must also bear in mind that the objection made in the Eberhard case above cited in matters of contract is applicable, though perhaps less directly, in the present case. It is probable that many interstate carriers have protected themselves by insurance against the liability created by the act of 1908. In every such case the insurers have based their contracts on the theory that the liability insured against is the liability created by that act, and endures no longer than the time fixed by the statute, which, as the courts have held, is an essential part of the contract. To enlarge that time would increase the hazard without the consent of the insurer, or cause loss by the carrier of the protection of its insurance. Our modern business is based so largely on insurance, our hopes of social betterment depend so on insurance, that we should not disturb the contracts unless the statute is clear. No one would suggest that it is. We think the act of February 28th, 1920, is inapplicable and the judgment must be reversed and the record remitted for a new trial.

*For affirmance* — THE CHANCELLOR, KALISCH, BLACK, JJ. 3.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 11.