## LEHIGH VALLEY R. CO. v. G. B. MARKLE CO.

(Circuit Court of Appeals, Third Circuit. February 17, 1922.)

### No. 2737.

Commerce ☞85—Interstate Commerce Commission may award reparation for overcharges made after filing of complaint.

Where, on the hearing before the Interstate Commerce Commission of a petition against a railroad company for reparation for unreasonable rates "heretofore and hereafter charged to petitioners," both parties treated the issues as embracing shipments made both before and after filing of the petition, and evidence relating thereto was taken without objection, the commission *held* to have power to award reparation for overcharges made after as well as before the filing of the petition.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by the G. B. Markle Company against the Lehigh Valley Railroad Company. Judgment for plaintiff (271 Fed. 989), and defendant brings error. Affirmed.

As dependent on the same question, the decrees in the cases of Pardee Bros. & Co. (No. 2738) and of Alan C. Dodson and others (No. 2739) against the Lehigh Valley Railroad Company are also affirmed.

Joseph Neff Ewing and Maurice Bower Saul, both of Philadelphia, Pa. (Edgar H. Boles, of New York City, and Saul, Ewing, Remick & Saul, of Philadelphia, Pa., of counsel), for plaintiff in error.

William A. Glasgow, Jr., of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, Circuit Judge, and WITMER and THOMSON, District Judges.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BUFFINGTON, Circuit Judge. In the court below, the G. B. Markle Company brought suit against the Lehigh Valley Railroad Company, to recover the amount of damages assessed by the Interstate Commerce Commission against the latter company for unlawful freight discrimination. Trial by jury was waived, and the case heard by the judge. He made findings of fact and conclusions of law, found for the plaintiffs, and entered judgment. This writ of error was then taken by the railroad.

While the record is large, the question before us centers to narrow limits, and following our rule, which provides:

"The brief shall contain * * * a statement of the question or questions involved, which shall be in the briefest and most general terms, without names, dates, amounts, or particulars of any kind whatever"

—the counsel for plaintiff in error thus summarizes the question involved:

"Can an award of reparation by the Interstate Commerce Commission be collected, when it is based upon shipments made subsequent to the filing of a complaint with the Commission?"

The present complaint to the Interstate Commerce Commission, made July 2, 1913, prayed an award of reparation "for the unjust and unreasonable rates *heretofore and hereafter charged to petitioners.*" Thereafter the railroad appeared and made answer, but raised no question of the Commission's right and power to award damages for the unreasonable rates "hereafter charged to petitioners." On the contrary, testimony was taken covering both periods before and after July 2, 1913, and all parties, as evidenced by their conduct and statements, litigated on the assumption that alleged discriminations covering both periods were before and would be determined by the Commission. Without entering into other details, it suffices to refer to the recognition and assumption that reparation for discrimination subsequent to the filing of the petition was in issue in the statement by counsel for the railroad, as follows:

"Another point is that they have perhaps had the Commission say they ought to have reparation; then they say they are going to file their statement as to the tonnage involved, but they have successfully so far evaded any allusion in this record to the amount of reparation that might be involved in this case. * * * For two years prior to this complaint, and nearly two years more since that time, there are over 1,000,000 tons of coal; but, even reducing the Lehigh rate to the basis of the Meeker rate from the Wyoming region to 15 cents, there is reparation in the neighborhood of $175,000 for one shipper."

In their report on the question of reparation, the Commission refer to the proceeding with reference to reparations for discrimination subsequent to filing of the petition in these words:

"At the further hearing on April 28, 1916, complainants and interveners submitted detailed statements of shipments made by them during the period from July 3, 1911, to March 31, 1916, inclusive. These exhibits have been checked by the defendant and the parties are in accord as to the amount of reparation claimed on shipments of prepared and pea sizes. * * * No objection was raised by the defendant to the inclusion of shipments which moved subsequently to the filing of the complaint, and we are of the opinion that the filing of a supplemental complaint covering such shipment was unnecessary."

In view of the nature of the pleadings and the course the proceeding took with the acquiescence of the railroad therein, we are of opinion the Commission was justified in taking cognizance of these later discriminations, and, having found against the defendant in that regard, the latter could not successfully and for the first time raise the question in the court below that the Commission was without jurisdiction. Having by its conduct acquiesced in the Commission's jurisdiction over shipments made after the petition was filed, and taken the chance of an award in its favor, it cannot, now that that issue has gone against it, challenge the exercise of a jurisdiction to which it assented. This conclusion finds support in Lehigh Valley v. American Hay Co., 219 Fed. 540, 135 C. C. A. 308 where it is said:

"But we see no ground for holding that it was not in the power of the Commission to allow a complaint to be amended or supplemented by incorporating transactions of a period later than its date of filing, especially when no objection to such amendment is interposed. There is no evidence that any such objection was raised; on the contrary, it is stated, and not contradicted, that both sides took testimony as to the later period. If that is so, the Commission might surely make findings and orders about the later period, as fully as if a new complaint had been filed to cover it."

Finding no error in the court below deciding the question involved, as stated above, in favor of the plaintiff in this writ, and also in Nos. 2738 and 2739, which turn on the same question, all of said numbered decrees are affirmed.